# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

| UNITED STATES OF AMERICA | PLAINTIFF |
|---|---|
| v. | No. 4:10-cr-265-DPM |
| ISRAEL MARTINEZ | DEFENDANT |

## ORDER

The Court sentenced Martinez to 150 months in prison after he pleaded guilty to possession with intent to distribute methamphetamine, one count of a five-count superseding indictment. № 31. The Court of Appeals affirmed the sentence. 475 Fed. App'x. 638 (2012)(*per curiam*). Martinez now petitions for relief under 28 U.S.C. § 2255, claiming his lawyer—his second appointed counsel—was ineffective in two ways. No evidentiary hearing is needed. *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010).

**Suppression.** Martinez says he did not knowingly and intelligently waive his *Miranda* rights because he does not speak English well. His counsel's allegedly constitutionally deficient failure to seek suppression of Martinez's statements to the police about guns at Martinez's home, he contends, resulted in a four-point enhancement of his offense level. Magistrate Judge Deere noted that Martinez was not well-versed in English

and assigned him an interpreter. *№ 10*. The assignment of an interpreter is not conclusive of Martinez's English skills. Nor does it, as Martinez argues, create a judicially established fact that Martinez is functionally illiterate in English. *№ 62 at 4*. Judge Deere determined only that Martinez speaks solely or mostly a language other than English. 28 U.S.C. § 1827. It is not the former; under oath at the plea hearing, Martinez said that he speaks and understands some English. *№ 51 at 4*.

Martinez must show that his lawyer failed to provide reasonably effective assistance to Martinez's prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-98 (1984). Whether Martinez's *Miranda* waiver was knowing and voluntary is gauged from the perspective of a reasonable police officer. *Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990). Martinez is right; we have no affidavit supporting the government's argument that the officer believed Martinez could speak English. This gap, though, is of no legal moment. The question is whether his lawyer's failure to challenge the waiver was professionally unreasonable.

It was not. Martinez's interaction with counsel is instructive: Martinez needed no interpreter to speak with his lawyer; his lawyer explained things

to him in detail, and he understood, *№ 51 at 5*; his lawyer gave him a draft of the plea agreement in English; Martinez never asked for a copy in Spanish. *№ 51 at 16.* The record indicates that all interaction between Martinez and his lawyer was in English. Nothing suggests Martinez provided his attorney with any reason to question the waiver based on a language problem. As the United States notes, audio and video of Martinez selling methamphetamine multiple times (in English) would have provided probable cause to search his house and find the guns. This goes not only to the lack of prejudice, it informs whether counsel stumbled or made a tactical choice on the post-arrest statements. All material circumstances considered, counsel's not moving to suppress was "within the wide range of reasonable professional assistance." *Williams v. United States,* 452 F.3d 1009, 1013 (8th Cir. 2006). The Court rejects Martinez's ineffective-assistance claim on the *Miranda* issue.

**The Safety Valve**. Martinez next says his counsel was ineffective by telling Martinez that he was eligible for safety-valve relief even though he wasn't. Martinez says he would have gone to trial had he known his guns made him ineligible. To show ineffective assistance at the plea stage, Martinez must demonstrate both that his lawyer's performance was

-3-

professionally unreasonable, and that without counsel's serious mistake, the plea process would have gone differently. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384-88 (2012).

Martinez's plea agreement left the safety valve up in the air. "If the defendant meets all the requirements of Title 18, United States Code, section 3553(f), he can qualify for the safety valve reduction[.]" № 39 at 4. This provision held out the possibility that the ten-year statutory minimum on Count 5 would be removed, 18 U.S.C. § 3553(f), and that Martinez's offense level would drop by two levels. U.S. Sentencing Guidelines Manual § 2D1.1(b)(16) (2012). The plea agreement also provided that neither party would seek a variance from the advisory Guideline range. № 39 at 4. The Court was not bound by this stipulation or any of the parties' stipulations about the Guidelines calculation. № 39 at 4-5.

At the plea hearing, after covering the minimums and maximums on all charged crimes and confirming that Martinez understood the rights he would give up by changing his plea, the Court turned to the uncertainties of sentencing and the proposed plea agreement. № 51 at 13-19. The Court noted the provision about the possibility of a safety-valve reduction if all statutory

-4-

provisions were satisfied. *№ 51 at 17.* No one said Martinez was ineligible at that moment because of the guns that had been found at his home with the drugs. Guns were not mentioned in the Government's offer of proof. *№ 51 at 19-20.* In hindsight, Martinez's counsel, who must have known about the search of Martinez's home and what was found there, should have recognized that the safety-valve could not apply in the circumstances.

The plea agreement, however, did not guarantee safety-valve relief. The parties agreed instead that relief was possible if all the criteria were satisfied. At his plea hearing, Martinez understood that his presentence report—prepared after any plea—would drive the Guideline ranges; safety-valve relief was a possibility, depending on the circumstances; and there were no sentencing certainties, other than the statutory maximums and minimums. *№ 51 at 14.* Martinez also understood that anything his lawyer might have told him about the Guidelines range was only an educated guess. *№ 51 at 13-14.* He cannot abandon that understanding because his expectations were not met at sentencing. *Brady v. United States*, 397 U.S. 742, 756 (1970); *№ 51 at 14.*

Counsel acknowledged at the sentencing hearing that he dropped the ball on presenting Martinez for a safety-valve proffer because of being

distracted by the death and funeral of counsel's brother. *№ 49 at 2-3.* This is understandable. As a possible continuance for a proffer was being discussed, it dawned on the Assistant United States Attorney that the lack of a proffer was immaterial: Martinez's guns made him ineligible for the safety valve in any event. *№ 49 at 3-4.* Martinez's counsel said he was unaware of this disqualifying factor. *Ibid.* During a short recess, both the Court and defense counsel researched the issue and confirmed this. *№ 49 at 4-5;* 28 U.S.C. § 3553(f)(2). While everyone involved should have discerned Martinez's ineligibility sooner, the precedent is clear: this type of information-gap is not enough to render counsel constitutionally ineffective. *Thomas v. United States*, 27 F.3d 321, 325-26 (8th Cir. 1994).

Even assuming his lawyer's performance was objectively unreasonable, there was no prejudice to Martinez. He must show that, absent counsel's mistake, there is a reasonable probability he would have gone to trial and not pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Martinez had waffled before on taking his chances at trial. He twice changed his mind about pleading guilty, *№ 24 & 27,* then asked that the Court appoint him a new lawyer. It did. *№ 29.* Martinez requested additional discovery, and does not

argue that it was not completed. *№ 48 at 10.* He agreed at sentencing — even after learning that he was safety-valve ineligible — that he was still satisfied with his new lawyer in all respects. *№ 51 at 5; № 49 at 5.* His knowing and voluntary plea undermines any argument that, with the benefit of his new counsel, he was still considering going to trial. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997).

Martinez acknowledges that his chances at trial were "remote." *№ 57 at 11.* His assessment is generous. Martinez was indicted on five counts of drug possession and distribution. *№ 31.* The evidence against him was overwhelming; police and federal officers recorded, both audio and video, every drug transaction. They recorded Martinez's incriminating phone calls with a confidential informant arranging the transactions. Martinez himself pointed police to drugs, drug paraphernalia, and weapons located in his home.

Martinez's plea eliminated the substantial likelihood of a guilty verdict on the five counts against him. *№ 31.* The possible penalties were stiff: Count 1 carried a minimum of ten years' imprisonment and a maximum of life. Counts 2 & 4 each carried five-year minimums and forty-year

maximums. Count 4 also carried a mandatory consecutive sentence, up to a twenty-year maximum, for endangering children. 21 U.S.C. § 860a. The penalty on Count 3 was zero to twenty years. A conviction on any count could have yielded a greater sentence than the 150 months' imprisonment Martinez received after pleading guilty to Count 5. Convictions on more than one count would have created the possibility of consecutive sentences, which would dwarf his current sentence. 18 U.S.C. § 3584. Martinez's plea-benefits go on: a three-point reduction for acceptance of responsibility and a stipulation to 149.8 grams of methamphetamine—the advisory Guideline range increases at 150 grams—lowered his imprisonment range. The conspiracy count charged involvement with more than 500 grams of a mixture containing methamphetamine. № 31.

Had Martinez gone to trial and lost—as was likely—his sentencing prospects would have been much worse. Without the safety valve, his advisory Guideline range was 135 to 168 months. *№ 49 at 7-9*. The parties had agreed, though the Court was not bound by their stipulation, to a Guideline sentence. *№ 39 at 4*. Had he met all criteria for the safety valve, Martinez's range would have been 108 to 135 months. Yet Martinez argues

that, had he known he was safety valve-ineligible, he would have rolled the dice at trial. His argument strains belief. *Evans v. Meyer*, 742 F.2d 371, 375 (7th Cir. 1984). No rational person would risk the possibility of life, or even twenty years, in prison for the possibility of gaining up to 27 months' downward wiggle room in the advisory Guideline range. It is "inconceivable . . . and not merely improbable" that Martinez would have taken so remote a chance. *Ibid.* Assuming his lawyer's performance was constitutionally unreasonable, Martinez can show no prejudice. The Court rejects Martinez's safety-valve claim.

\* \* \*

The motion, № 57, is denied with prejudice.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

16 May 2013